```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK

In re:                           :
                                     Docket #16m2011
 UNITED STATES OF AMERICA,       :

                Plaintiff,       :

   - against -                   :

 ANDREW CASPERSEN,               : New York, New York
                                   March 28, 2016
                Defendant.       :

----------------------------------- :


                  PROCEEDINGS BEFORE
            THE HONORABLE JAMES C. FRANCIS,
        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:          U.S. ATTORNEY'S OFFICE
                        BY:  CHRISTINE MAGDO, ESQ.
                        One Saint Andrew's Plaza
                        New York, New York 10007


For Defendant:          MCKOOL SMITH
                        BY:  DANIEL LEVY, ESQ.
                        One Bryant Park, 47th floor
                        New York, New York 10036






Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                                                          3
 2                THE CLERK:   U.S. v. Andrew Caspersen.  Counsel,
 3    please state your names for the record.
 4                MS. CHRISTINE MAGDO:   Good afternoon, Your Honor,
 5    Assistant United States Attorney Christine Magdo on behalf
 6    of the Government.  With me at counsel table is Kirk Caper
 7    (phonetic), a criminal investigator from my office.
 8                THE COURT:   Good afternoon.
 9                MR. DANIEL LEVY:   Good afternoon, Your Honor,
10    Daniel Levy from McCool Smith on behalf of Andrew Caspersen
11    who's sitting to my right.
12                THE COURT:   Good afternoon.  Mr. Caspersen, I'm
13    Judge Francis.  The purpose of this proceeding is to inform
14    you of certain rights that you have, to inform you of the
15    charges against you, to consider whether counsel should be
16    appointed for you, and to decide under what conditions you
17    should be released.  Date and time of arrest please.
18                MS. MAGDO:   Saturday, March 26 at approximately
19    5:30 p.m.
20                THE COURT:   Mr. Caspersen, you have the right to
21    remain silent.  You are not required to make any
22    statements.  Even if you have made any statements to the
23    authorities, you need not make any further statements.
24    Anything that you do say can be used against you.
25                You have the right to be released either
```

```
 1                                                       4
 2  conditionally or unconditionally pending trial unless I
 3  find that there are no conditions that would reasonably
 4  assure your presence in court and the safety of the
 5  community.
 6            You have the right to be represented by counsel
 7  during all court proceedings, including this one, and
 8  during all questioning by the authorities.  If you cannot
 9  afford an attorney, I will appoint one today to represent
10  you, but I note that you've retained counsel.
11            The complaint charges you in two counts.  Count 1
12  charges securities fraud in violation of Title 15 of the
13  United States Code §§ 78(j)(b) and 78(f)(f) and 17 Code of
14  Federal Regulations § 240.10(b)(5).  If convicted on that
15  count, you'd be subject to a term of imprisonment of up to
16  20 years, a fine of up to $5 million, and a $100 special
17  assessment.  Count 2 charges wire fraud in violation of
18  Title 18 of the United States Code § 1343.  If convicted on
19  that count, you'd be subject to a term of imprisonment of
20  up to 20 years, a fine of up to $250,000, and a $100
21  special assessment.
22            Mr. Levy, have you had an opportunity to review
23  the complaint with your client?
24            MR. LEVY:  Mr. Caspersen has reviewed the
25  complaint, and we waive its public reading.
```

5

1

2          THE COURT:   Mr. Caspersen, you have the right to

3    a preliminary hearing at which the Government will have the

4    burden of establishing that there is probable cause to

5    believe that the crime for which you are charged has been

6    committed and that you are the person who committed it.   If

7    probable cause is not established, you will be released

8    from the charges.   If it is established, the Government

9    will then have a right to proceed to trial against you.

10          If you're in custody, you have the right to a

11   preliminary hearing within 14 days.   If you are not in

12   custody, the preliminary hearing will be held within 21

13   days.   But no preliminary hearing will be held if before

14   the date that it's scheduled you are indicted by a grand

15   jury or an information is filed against you by the

16   Government.   Does the Government have a bail

17   recommendation?

18          MS. MAGDO:   Well, Your Honor, I've talked with

19   counsel for the defendant, and there are a few things that

20   we agree on.   One is that he is bailable.   He has

21   surrendered his passport.   We agree that he would limit his

22   travel to the Southern District of New York, Connecticut,

23   and New Jersey.   And he will seek mental health treatment.

24          Where the two sides disagree is on the amount of

25   the bond and the amount of assets that will secure the

                                                                6

1    bond.  Defense counsel has proposed a $1 million bond

2    secured by $50,000 in cash.  The Government feels that that

3    is far too low to assure his appearance in court.  If I

4    could just give Your Honor some facts that might be

5    helpful.

6          Mr. Caspersen and his wife own an apartment in

7    Manhattan that is unencumbered and is worth between $1.5

8    and $2.3 million.  They also have equity in a house in

9    Bronxville in the amount of approximately $1.1 million.  In

10   addition, Mr. Caspersen has had significant income over the

11   last three years.  Last year, 2015, his total compensation

12   in terms of his salary and his cash bonus was $3.68

13   million.  In 2014 his total compensation was $4.5 million.

14         I'd also like to stress how sophisticated the

15   scheme was, Mr. Caspersen incorporated fake companies that

16   resembled real firms and real private equity funds.  He

17   used over a dozen bank accounts in the names of these shell

18   companies.  He created a fake domain name, he invented

19   identities of people, and he used identifies of real

20   individuals without their knowledge.  He also went so far

21   as to register a phone number for one of the fake

22   individuals.

23         He even stole money from his own employer, and he

24   came up with an elaborate story to tell his investors.  And

7

now he say she has no assets, and we wonder why he would

tell the truth now when he's still lying to people all

along.

          We think he's a flight risk because he used shell

company bank accounts through which he moved tens of

millions of dollars.  And, frankly, we don't know where all

of that money went at this point.  It may have been

transferred to other people, it may have been transferred

abroad.  We just don't have any visibility into where all

the money went.  In addition, he has substance abuse

issues, serious mental health issues.  And, finally, there

is a potential maximum term on each count of twenty years,

and aside from the statutory max, just given the loss

amount in this case, the guidelines would be well over ten

years.

          It's also concerning to the Government that Mr.

Caspersen has a mother and three brothers, all of whom are

employed professionals, and only one of them is willing to

come forward and that's to put down $50,000 in cash.  It's

worth noting that when Mr. Caspersen's father died, excuse

me, in 1998, when he sold his company, he was worth

approximately $1 billion.  This is not an ordinary case,

this is not an ordinary family with ordinary assets.

          So for those reasons the Government would ask for

```
 1                                             8
 2   a significantly higher bond with significantly more
 3   security.
 4             THE COURT:   Well, tell me exactly what that
 5   means.
 6             MS. MAGDO:   We would ask for a $20 million bond
 7   secured by $10 million in property.
 8             THE COURT:   Where does that $10 million in
 9   property come from?
10             MS. MAGDO:   Well, for one thing if he puts up his
11   two residents, which at a very minimum he should be
12   required to do, that would be about close to $4 million in
13   equity, and we think that the family should be able to
14   pledge additional assets to help make sure that he appears
15   in court.
16             THE COURT:   You mean the balance of the
17   conditions that the Government's requesting?
18             MS. MAGDO:   He surrendered his passport, so we're
19   done with that.  Don't apply for new travel documents.
20   That his travel be restricted to the Southern District of
21   New York, New Jersey, Connecticut.  That the usual pretrial
22   conditions that he report to and cooperate with Pretrial
23   Services and also mental health treatment.
24             THE COURT:   Substance abuse?
25             MS. MAGDO:   I would say at the discretion of
```

9

Pretrial Services.

THE COURT:   Thank you.  Mr. Levy.

MR. LEVY:   Your Honor, thank you very much.  I appreciate it.  Just a few things.  One of the things that Miss Magdo ended her discussion with, a suggestion that the defendant's father when he died was worth a billion dollars.  I told Miss Magdo before this proceeding that that was based on an erroneous accounting in a newspaper. It's preposterous.

MS. MAGDO:   I corrected myself.  I said when he sold his company.  I misspoke at first.

MR. LEVY:   He was never worth a billion dollars, not when he sold his company, not when he owned his company, not when he died.  He died in debt.  So the notion that somehow the defendant's father had a billion dollars and now the defendant has access to it, I would note that the defendant is living in a house, one of the homes that he owns has a significant mortgage on it.  If he had access to some mysterious billion dollars, you would think he would not have a $2 million mortgage on his home.  He doesn't.  It's preposterous.  I would've expected more. But that was the suggestion that counsel made.

Mr. Caspersen has incredibly strong ties to the community.  He has three brothers.  He has a wife who's

here in court.  One of his brothers is here in court.  He
has two young children; they're almost one and three.  He
has a mother who lives in Florida.  Other than travel for
work and for vacations, he's had no travel outside the
United States.  He would not have the foggiest idea of how
to obtain fake travel documents to allow him to travel
outside the United States.

The cosigners that Mr. Caspersen's proposing are
his wife, who's not presently working, she's on a
sabbatical, but she has, she makes well over $200,000 in
her job.  She jointly owns a home and an apartment with Mr.
Caspersen.  We would propose his brother, who's also here
in court, who makes over a half a million dollars a year,
and who owns his own together outright with his wife.  And
Mr. Caspersen's sister-in-law would also cosign a bond.  We
would propose that these three cosigners would be more than
sufficient to guarantee the defendant's return to court.

The question is not sort of what assets he has.
He doesn't have very much, as you can see from the Pretrial
Services report.  I'll get to that in a moment.  The
question is what are the conditions that would ensure his
return to court, and we submit that a $2 million personal
recognizance bond cosigned by these three people, and if
necessary $50,000 in cash as security for the bond would be

1

2  sufficient for this defendant to return to court.

3          The notion that a $20 million bond is necessary

4  secured by $10 million in property, it's preposterous given

5  the assets that this defendant has.  There's no secret pot

6  of money out there that Mr. Caspersen has the ability to

7  tap into on his own.  It's just not there, and the bail

8  package suggested by the Government is so far beyond what

9  is appropriate in this case.  The defendant's proposed bail

10 package will ensure that he returns to court.

11          I wanted to make a couple of points about the

12 Pretrial Services report so you're, for the benefit of the

13 Court.  On page 5, in the paragraph starting, "The

14 defendant reported," the second half of that sentence where

15 the Pretrial Services officer indicates "but did not

16 believe it was excessive."  What Mr. Caspersen actually

17 said was that he drank more than he should.  We submit that

18 as part of the conditions that alcohol treatment be

19 ordered.  As you can see from the information above, he's a

20 daily user of alcohol.

21          On the prior page, page 4, in the paragraph

22 beginning, "The defendant advises," at the end of that

23 first sentence where the Pretrial Services report indicates

24 "but has had thoughts," I'm trying to be a little

25 circumspect.  I'm quite confident Your Honor's following

1

2  me.  Those thoughts were quite recent, and I think that

3  that's what generates the appropriateness of mental health

4  treatment as directed by the Pretrial Services officer.

5  The defendant's family is very anxious to make sure that he

6  gets the appropriate kind of treatment given the recency of

7  the issues that I just referred to.

8          And then one minor thing on page 3 of the Pretrial

9  Services report, under the category of Land.  It's reported

10  as 1.1 million.  That's really just the equity in the home

11  that is owned in Bronxville.  It's not some unimproved

12  piece of land that's located out there.

13          THE COURT:  I'm not clear on the property.

14          MR. LEVY:  Okay.

15          THE COURT:  We're talking about the Bronxville

16  residence which has an equity of 1.1 million, and there's

17  an apartment?

18          MR. LEVY:  Correct, and there's an apartment in

19  Manhattan that the defendant owns jointly with his wife

20  that's worth, and that's reflected in the second paragraph

21  on page 3, worth somewhere between 1.5 and 2.3 million, and

22  they own it outright.

23          So, Your Honor, we're not engaging in positional

24  bargaining by suggesting much lower than the Government.

25  We just think that the - so that the Court sort of lands in

13

the middle.  We just think that the Government's suggestion
of a $20 million bond secured by $10 million property is
preposterous.  It's so far out of bounds given this
defendant's assets.

There's some sophisticated aspects of the conduct
that's charged in the complaint.  There's also rather some
amateur aspects of the conduct charged in the complaint.  I
don't think we need to go tit for tat about sort of how
sophisticated the charged conduct was.  The point is what
is going to ensure Mr. Caspersen's return to court, and we
submit that the bail package that is proposed by cosigners
with real financial wherewithal, some property in the form
of some cash put up will guarantee this defendant's return
to court.  He simply wouldn't know where, the first place
to go.

THE COURT:  I guess the disturbing point to me is
that we, apart from all of the factors that we've
discussed, we still have the issue of if we credit the
allegations in the complaint, we have the issue of
unaccounted for assets.

MR. LEVY:  I think the fair inference from the
conduct in the complaint is that the losses associated with
the (indiscernible) in charge have eviscerated any assets.
There's just no (inaudible).

```
 1                                                  14
 2              THE COURT:   Thank you.  Miss Magdo, I'll hear
 3    from you, but I also wanted to know what your
 4    recommendation was with respect to cosigners.
 5              MS. MAGDO:   Yes.  Sorry, I forgot to address that
 6    originally.  The three financially responsible people is
 7    fine, and if after they're interviewed, those three
 8    individuals turn out to be financially responsible, we feel
 9    they would be sufficient to sign a bond.
10              With respect to the outstanding money, there's
11    just no basis for saying, based on the complaint or
12    anything else, that the money has been accounted for.
13    There's a $9 million wire out of his personal brokerage
14    account December 4 that is still unaccounted for.  So we
15    just don't know where the money is.  For law enforcement
16    purposes, we took this case out quite quickly, and there
17    are just assets out there.  Maybe they were lost, but we
18    just don't know.
19              THE COURT:   Thanks.  Anything further?
20              MR. LEVY:   Your Honor, just one last thing.  I
21    think -- I would submit that the defendant is appropriate
22    to be released on his own signature whatever amount of bond
23    that the Court sets.  Two of his proposed cosigners, who I
24    have little reason to think will be rejected by the
25    Government, are here in court, and they're willing to
```

1  cosign the bond today.

2          THE COURT:   So it's not on his signature.  It's

3  on the signature --

4          MR. LEVY:   On his signature and the signature of

5  two of the proposed cosigners.

6          THE COURT:   All right.  On the basis of the

7  Pretrial Services report and the complaint and proffers of

8  counsel, I will release Mr. Caspersen on a $5 million

9  personal recognizance bond secured by the two properties

10  that we've referred to, that is the Bronxville property and

11  the apartment co-owned with his wife, as well as $50,000 in

12  cash.  That bond should be cosigned by three financially

13  responsible persons.  Mr. Caspersen may be released on his

14  signature together with that of two cosigners with the

15  property and cash and the remaining cosigner to be provided

16  within two weeks, which is April 11.

17          He shall surrender all travel documents and not

18  apply for new ones.  His travel shall be remitted to the

19  Southern and Eastern Districts of New York, the District of

20  New Jersey, and the District of Connecticut.  He shall be

21  subject to strict Pretrial Services supervision, including

22  alcohol testing and treatment and mental health treatment

23  to the extent that the Pretrial Services office deems

24  necessary.  I think that's all the conditions.  Was there

                                                              16

anything else?

          MR. LEVY:   I think it is.  The one issue that

presents some complication is that one of the pieces of

property is a New York City co-op.  They're difficult to

put up as security in connection with a bond because sort

of the ownership limitations, and I would hope that the

Court and the Government would entertain substituting out a

different piece of property if it proves impossible to post

the New York City co-op.

          THE COURT:   Let's see where we go on that.

          MR. LEVY:   Okay.

          THE COURT:   If there's nothing else, preliminary

hearing date.

          MR. LEVY:   We would waive to the 30th day.

          THE COURT:   April 26.  Thank you all.

          MR. LEVY:   Thank you, Your Honor.

          (Whereupon the matter is adjourned.)

```
 1                                                          17
 2                      C E R T I F I C A T E
 3
 4           I, Carole Ludwig, certify that the foregoing
 5   transcript of proceedings in the case of United States v.
 6   Caspersen, Docket #16m2011, was prepared using digital
 7   transcription software and is a true and accurate record of
 8   the proceedings.
 9
10
11
12   Signature_____
13
14   Date:    April 2, 2016
15
16
17
18
19
20
21
22
23
24
25
```