UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :
                                 :
          - v. -                 :    **INFORMATION**
                                 :
ANDREW CASPERSEN,                :    16 Cr.
                                 :
          Defendant.             :    **16 CRIM 414**
                                 :
- - - - - - - - - - - - - - - - x



**COUNT ONE**
**(Securities Fraud)**

The United States Attorney charges:

**Background**

1.  At all times relevant to this Information, a firm not named herein ("Firm-1") was a multi-national firm, headquartered in London, that invested in the private equity secondary market by buying and selling partnership interests in third-party funds. From in or about 2003 through in or about 2012, ANDREW CASPERSEN, the defendant, was employed as an investment principal in Firm-1's New York office.

2.  At all times relevant to this Information, the Park Hill Group was a global advisory and placement agent, with an office in New York, New York. From in or about January 2013 through in or about March 2015, ANDREW CASPERSEN, the defendant, was employed in the secondary advisory group at Park Hill Group, where he provided services to private equity fund investors and

JUDGE RAKOFF

managers seeking portfolio liquidity, unfunded commitment relief, and investments in the secondary market.

3. At all times relevant to this Information, a firm not named herein ("Firm-2") was a multinational hedge fund, headquartered in New York, New York. At all times relevant to this Information, an individual not named herein ("Individual-1"), in connection with his employment at Firm-2, evaluated and recommended investors for a charitable foundation (the "Foundation") affiliated with Firm-2.

4. At all times relevant to this Information, firms not named herein were private equity firms with offices in New York, New York ("Firm-3" and "Firm-4"), each of which managed a private equity fund not named herein ("Firm-3 Fund" and "Firm-4 Fund," respectively.

5. At all times relevant to this Information, a firm not named herein ("Firm-5") was a private equity firm, headquartered in New York, New York, that managed a private equity fund worth approximately $2.87 billion in late 2014 ("Firm-5 Fund", collectively, with Firm-3 Fund and Firm-4 Fund, the "Legitimate Funds"). In or about September 2014, Firm-5 engaged Park Hill Group in connection with its effort to offer liquidity to investors who had originally invested in the Firm-5 Fund at its inception, in or about 2006 (the "Original Investors"). ANDREW CASPERSEN, the defendant, acting on behalf of Park Hill Group,

brokered a deal in which Firm-1 would offer to purchase the interests of any of the Original Investors who wanted to sell their positions in Fund-5. The last sales in connection with this offer were consummated in or about August 2015.

### Overview of the Scheme to Defraud

6. From at least in or about November 2014 up through and including in or about March 2016, ANDREW CASPERSEN, the defendant, engaged in a Ponzi-like scheme to defraud more than a dozen investors, including his close friends, family members, and college classmates, of nearly $150 million, by falsely claiming that their funds would be used to make secured loans to private equity firms and would thereby earn an annual rate of return of 15 to 20 percent. As a result of the false and fraudulent representations made by CASPERSEN, investors wired a total of approximately $38.5 million to shell company bank accounts controlled by CASPERSEN. In truth and in fact, CASPERSEN never used investor funds to make the secured loans that had been promised. Instead, CASPESEN used investor funds for purposes that investors had not authorized, including to make securities trades in his own brokerage account and to make periodic interest payments to earlier investors.

**The Scheme to Defraud**

CASPERSEN Creates Shell Companies with Names that
Closely Resemble Those of Legitimate Funds

7. In furtherance of the scheme to defraud, ANDREW CASPERSEN, the defendant, incorporated entities with names closely resembling those of the Legitimate Funds. In or about August 2014, CASPERSEN incorporated an entity with a name that closely resembled the Firm-3 Fund ("Fake Firm-3 Fund"). In or about January 2015, CASPERSEN incorporated an entity with a name that closely resembled Firm-4 Fund ("Fake Firm-4 Fund"). On or about July 27, 2015, CASPERSEN incorporated an entity in Delaware with a name intended to resemble a special purpose vehicle for the Firm-5 Fund (the "Fake Firm-5 Fund", collectively with Fake Firm-3 Fund and Fake Firm-4 Fund, the "Fake Funds"). Despite their apparent affiliation with the Legitimate Funds, the Fake Funds were merely shell companies created by CASPERSEN solely for the purpose of perpetrating his fraud scheme, and were in no way affiliated with or authorized by the Legitimate Funds, Firm-3, Firm-4, or Firm-5.

8. In connection with the incorporation of Fake Firm-5 Fund, ANDREW CASPERSEN, the defendant, submitted to the Delaware Secretary of State a "Certificate of Formation," allegedly signed by an individual not named herein ("Individual-2"), in Individual-2's purported capacity as President of Fake Firm-5 Fund. In or about March 2016, in connection with the scheme,

4

CASPERSEN claimed that Individual-2 was the President of Fake Firm-5 Fund, and sent to a potential investor a scan of Individual-2's driver's license, which scan CASPERSEN had obtained from Individual-2 under false pretenses. Similarly, CASPERSEN claimed that an individual not named herein ("Individual-3") was the Treasurer of Fake Firm-5 Fund, and sent to a potential investor a scan of Individual-3's driver's license, which scan CASPERSEN had obtained from Individual-3 under false pretenses. In truth and in fact, Individual-2 and Individual-3 had no affiliation with or knowledge of Fake Firm-5 Fund, and CASPERSEN used the identities of Individual-2 and Individual-3 without their knowledge or permission.

9. In or about the same months in which ANDREW CASPERSEN, the defendant, incorporated each of the Fake Funds, CASPERSEN opened accounts for each of the Fake Funds at a bank in New York, New York (the "Fake Firm-3 Fund Account," "Fake Firm-4 Fund Account," and "Fake Firm-5 Fund Account," respectively; collectively, the "Fake Fund Accounts"). At all times relevant to this Information, the Fake Fund Accounts were controlled by CASPERSEN.

10. On or about March 7, 2016, ANDREW CASPERSEN, the defendant, registered the domain name "[Firm-1]llc.com" and created the email address "john.nelson@[Firm-1]llc.com," which email address CASPERSEN then used to communicate with the

Foundation, purportedly on behalf of Firm-1. In truth and in fact, the domain name and email address were controlled by CASPERSEN and had no affiliation with Firm-1, and no one by the name of "John Nelson" was employed by Firm-1.

### CASPERSEN Makes False Representations to Friends and Family Members

11. During the course of the scheme, ANDREW CASPERSEN, the defendant, solicited investments from more than a dozen individuals with whom he had relationships of trust, including close friends, family members, and college classmates, in Fake Firm-3 Fund, Fake Firm-4 Fund and ultimately in Fake Firm-5 Fund. In connection with multiple solicitations regarding purported credit facilities, which CASPERSEN made by telephone and email, CASPERSEN made certain of the following false representations to investors, among others: (a) in recognition for his prior work with Park Hill Group, CASPERSEN had been offered a "friends and family" investment allocation in a security which was allegedly offered by Firm-3, Firm-4, and ultimately Firm-5 (as the scheme progressed); (b) CASPERSEN was personally investing in the security, and offering it to his family and a limited number of friends; (c) the investment was a credit facility secured by a portfolio of assets owned by one of the Legitimate Funds for which he was allegedly soliciting investments; (d) the investor would receive quarterly interest payments, ranging from 15 to 20 percent; (e) the investment was

6

practically risk-free, as the loaned funds would remain in a bank account; (f) the investor could withdraw the principal at any time with 90 days' notice; and (g) investor funds should be wired to one of the Fake Fund Accounts. The purported involvement of the Legitimate Funds was an attractive selling point for investors.

12. For example, ANDREW CASPERSEN, the defendant, made false and misleading representations to Individual-2 in order to induce Individual-2 to invest in Fake Firm-4 Fund, which investment Individual-2 made on or about January 30, 2015. In July 2015, CASPERSEN fraudulently used Individual-2's name to incorporate Fake Firm-5 Fund. In addition, CASPERSEN falsely told Individual-2 that Fake Firm-4 Fund needed a copy of Individual-2's driver's license for regulatory "know your customer" purposes. After CASPERSEN received a scan of Individual-2's driver's license, CASPERSEN used it with fake documents he created to solicit additional investors in Fake Firm-5 Fund.

13. As the scheme evolved, from in or about July 2015 through in or about March 2016, ANDREW CASPERSEN, the defendant, also made the following additional misrepresentations in soliciting investors in connection with a purported investment opportunity in Fake Firm-5 Fund: (a) Firm-1 wanted to purchase secondary ownership interests in Firm-5 Fund; (b) due to

uncertainty that Firm-1 could buy out all the original investors, Park Hill Group offered to make a loan to Firm-1; (c) Firm-1 agreed to take a loan from Park Hill Group; (d) CASPERSEN and Park Hill Group were working on behalf of Firm-1 to solicit investors for the loan; (e) at some point after Firm-1 agreed to take the loan, it transpired that Firm-1 did not need the loan in order to purchase the secondary private equity interests; (f) because Firm-1 had already agreed to the loan, Firm-1 was obligated to pay interest on the loan; and (g) the loan was risk-free, as it was collateralized by the assets of Fund-1. As with the earlier solicitations in the Fake Funds, investors were similarly misled by the purported involvement of Legitimate Firm-5 Fund in this investment.

14. For example, ANDREW CASPERSEN, the defendant, in order to induce Individual-1 to invest in Fake Firm-5 Fund, made false and misleading representations to Individual-1, and sent Individual-1 the 2014 annual report for Legitimate Firm-5 Fund, as well as sham documents, such as a security agreement and a promissory note signed by "John Nelson," purportedly on behalf of Fake Firm-5 Fund. On or about November 5, 2015, as a result of CASPERSEN's misrepresentations, Individual-1 made an investment, in a total amount of $25 million, on behalf of the Foundation and Individual-1.

15. Several months later, in or about March 2016, ANDREW CASPERSEN, the defendant, solicited an additional $20 million investment from Individual-1 and the Foundation by making false and misleading representations to Individual-1, and by sending Individual-1 a letter and a promissory note, again signed by "John Nelson," purportedly on behalf of Fake Firm-5 Fund. When Individual-1 raised questions about the identity of "John Nelson," CASPERSEN sent Individual-1 emails from the "john.nelson@[Firm-1]llc.com" account, an email address that CASPERSEN controlled, and that was not affiliated with Firm-1.

16. In connection with the scheme, ANDREW CASPERSEN, the defendant, received approximately 18 payments, in a total amount of approximately $38.5 million, from more than ten individuals and entities for investments in the Fake Funds. At least six investors were fraudulently induced by the misrepresentations of CASPERSEN to invest at least $28 million in Fake Firm-5 Fund, including several investors who had previously invested in Fake Firm-3 Fund and Fake Firm-4 Fund. In addition, CASPERSEN attempted to solicit approximately $110 million more in the Fake Funds using similar misrepresentations.

CASPERSEN's Use of Sham Documents to Further the Scheme

17. In furtherance of the scheme, ANDREW CASPERSEN, the defendant, obtained recent quarterly and annual reports for the Legitimate Funds, and sent such reports to prospective investors

to induce them into believing that their investments would be secured by the assets of the Legitimate Funds. In truth and in fact, the assets of the Legitimate Funds were not securing the purported loans in which CASPSERSEN was soliciting investors.

18. Moreover, ANDREW CASPERSEN, the defendant, drafted promissory notes between the investors and the Fake Funds. In connection with the promissory notes, which CASPERSEN sent to potential investors by email, CASPERSEN made certain of the following misrepresentations, among others: (a) the Fake Fund would pay the investor his or her principal "in immediately available funds" together with interest on the unpaid principal; (b) interest on the outstanding unpaid balance shall accrue at an annual rate of 15 to 20 percent; (c) interest shall be paid quarterly; (d) upon 90 days' notice to the Fake Fund, the investor may redeem his or her principal; and (e) the Fake Fund "shall maintain cash or cash equivalents in an amount equal to or greater than" the total of the outstanding principal and accrued but unpaid interest.

19. In addition, ANDREW CASPERSEN, the defendant, falsely told potential investors that their loans would be secured by collateral worth approximately one billion dollars. For example, in connection with the series of misrepresentations that CASPERSEN made to solicit investments in Fake Firm-5 Fund, CASPERSEN drafted a security agreement which purported to show

that the loan that Firm-1 was allegedly making to Fake Firm-5 Fund was secured by the legitimate assets of Firm-5 Fund. In truth and in fact, no loan by Firm-1 had ever been promised to Fake Firm-5 Fund.

<u>CASPERSEN Converted Investor Money to His Own Use</u>

20. In truth and in fact, as ANDREW CASPERSEN, the defendant, well knew, the representations he made to investors were false. Notwithstanding CASPERSEN's statements to the contrary, CASPERSEN never used any investor funds to make any loan to any entity, or otherwise invest in, any fund or investment vehicle associated with any private equity fund. Rather, CASPERSEN operated a Ponzi-like scheme in which he misappropriated investor funds from the Fake Fund Accounts and converted them to his own use and use by others, including by using investor funds to meet CASPERSEN's periodic interest payment commitments to earlier investors.

21. For example, from in or about November 2014 through in or about November 2015, ANDREW CASPERSEN, the defendant, received investor funds into the Fake Fund Accounts via interstate wire transfers, and then used the funds to, among other things, make deposits into his personal brokerage account ("Brokerage Account-1"). Once the funds were received in Brokerage Account-1, CASPERSEN used the funds to execute securities trades for his own benefit. Specifically, CASPERSEN

traded heavily in options, including options based on the Standard & Poor's Depository Receipts S&P 500, an exchange traded fund based on the S&P 500 with ticker symbol "SPY," and options based on PowerShares QQQ, an exchange-traded fund based on the Nasdaq 100 Index. For example, CASPERSEN's trades of SPY options with November 2015 expiration dates caused approximately $14.5 million in losses in Brokerage Account-1.

22. On or about December 4, 2015, ANDREW CASPERSEN, the defendant, transferred a balance of approximately $9,450,000 from Brokerage Account-1 into another personal brokerage account in CASPERSEN's name at another financial institution ("Brokerage Account-2"). From in or about December 2015 through in or about March 2016, CASPERSEN transferred additional investor funds into Brokerage Account-2, and used those funds to execute securities trades for his own benefit, predominantly in options based on the performance of the S&P 500 Index.

23. On or about February 11, 2016, as a result of trading by ANDREW CASPERSEN, the defendant, Brokerage Account-2 contained approximately $112.8 million dollars in cash, an amount which would have been more than sufficient for CASPSERSEN to repay all of his investors. Rather than repay his investors, however, CASPERSEN continued trading in options based on the performance of the S&P 500 Index. From on or about February 11, 2016 through on or about March 9, 2016, CASPERSEN lost

approximately $108.2 million in options trading in Brokerage Account-2. During the same time period, CASPERSEN transferred approximately $3.35 million from Brokerage Account-2 into other bank accounts that CASPERSEN controlled.

### Statutory Allegations

24. From at least in or about November 2014 up through and including in or about March 2016, in the Southern District of New York and elsewhere, ANDREW CASPERSEN, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, CASPERSEN solicited investments in securities by falsely representing that investors' funds would be used to make a secured loan to an investment firm, when in fact no such security existed and no investments were made, and which funds

CASPERSEN converted to his own use, and the use of others, without the authorization of his investors.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
(Wire Fraud)

The United States Attorney further charges:

25. Paragraphs 1 through 23 are re-alleged as if fully set forth herein.

26. On or about July 24, 2015, ANDREW CASPERSEN, the defendant, opened a bank account at a financial institution in New York, New York, under the name "PHG Operating LLC," which account was controlled by CASPERSEN for his own benefit and was unknown to Park Hill Group (the "Fake PHG Account").

27. On or about September 8, 2015, following instructions provided by ANDREW CASPERSEN, the defendant, Firm-5 sent a wire transfer in the amount of $8,137,453, representing payment for legitimate work that Park Hill Group had done in connection with Firm-1's buy-out of the Firm-5 Fund, as described above, to the Fake PHG Account, believing it to be a legitimate account used by Park Hill Group. On or about the same day, CASPERSEN transferred eight million dollars from the Fake PHG Account to Brokerage Account-1, in order to execute trades in securities for his own benefit, largely in SPY options.

28. Similarly, on or about October 21, 2015, following instructions provided by ANDREW CASPERSEN, a firm not named herein ("Firm-6") sent a wire transfer in the amount of $762,267, representing payment for legitimate work that Park Hill Group had done for Firm-6, to the Fake PHG Account, believing it to be a legitimate account used by Park Hill Group. On or about October 22, 2015, ANDREW CASPERSEN, the defendant, sent $750,000 from the Fake PHG Account to Brokerage Account-1, which he then used to execute trades in securities for his own benefit, largely SPY options.

29. On or about November 5, 2015, after receiving the $25 million wire transfer from the Foundation, ANDREW CASPERSEN, the defendant, transferred approximately $8.1 million from the Fake Firm-5 Fund Account to an account belonging to Park Hill Group, thereby replacing the Firm-5 payment that he had misappropriated from Park Hill Group. On or about the same day, CASPERSEN transferred approximately $16.5 million, the remainder of the Foundation's $25 million payment, from the Fake Firm-5 Fund Account to Brokerage Account-1.

30. On or about November 24, 2015, ANDREW CASPERSEN, the defendant, transferred approximately $760,000 of investor funds from the Fake Firm-5 Fund Account to Brokerage Account-1. On or about the next day, CASPERSEN transferred approximately $770,000 of investor funds from Brokerage Account-1 to an account that,

15

while held in a name similar to that of Firm-6, was actually under the control of CASPERSEN ("Fake Firm-6 Account"). On or about November 30, 2015, CASPERSEN transferred $762,267 from Fake Firm-6 Account to an account belonging to Park Hill Group, thereby replacing the Firm-6 payment he had misappropriated from Park Hill Group.

### Statutory Allegations

31. From in or about July 2015 through in or about November 2015, in the Southern District of New York and elsewhere, ANDREW CASPERSEN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds for the purpose of executing such scheme and artifice to defraud, to wit, CASPERSEN falsely represented to clients of Park Hill Group, including through the use of email, that the Fake PHG Account was owned by Park Hill Group, and thereby caused those clients to transfer funds, through the use of wire transfers, to the Fake PHG Account, which funds CASPERSEN then converted to his use and the use of others, including through the use of wire transfers, without the

authorization of Park Hill Group or its clients.

(Title 18, United States Code, Sections 1343 and 2.)

## **FORFEITURE ALLEGATION**

32. As a result of committing one or more of the offenses alleged in Counts One and Two of this Information, ANDREW CASPERSEN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section § 981(a)(1)(C) and Title 28, United States Code, Section § 2461, any property, real and personal, constituting or derived from any proceeds that the defendant obtained, directly or indirectly, as a result of the offenses, including but not limited to:

    a. A sum of money of at least $47,445,355 in United States currency;

    b. All funds on deposit in the following accounts:

        i. Account Number 80000815267, in the name of Christina Caspersen, held at First Republic Bank;

    c. All right, title and interest in the real property located at One Library Lane, Bronxville, New York; 10708; and

    d. All right, title and interest in the single residential co-op unit 7A, located at 175 East 62nd Street, New York, New York, 10065.

17

## Substitute Asset Provision

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

(Title 18, United States Code, Sections 981(a)(1)(C) and 982(b),
Title 21, United States Code, Section 853,
Title 28, United States Code, Section 2461.)

*Preet Bharara*
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v. -

**ANDREW CASPERSEN,**

Defendant.

## INFORMATION

16 Cr. ___

(Title 15, United States Code,
Sections 78j(b) and 78ff;
Title 17, Code of Federal
Regulations, Section 240.10b5; and
Title 18, United States Code,
Sections 1343 and 2.)

PREET BHARARA
United States Attorney.