NEIL S. GOLDMAN, M.D.
235 West 48 Street - 26 H
New York, New York 10036
Tel: (212) 929-4395    Fax: (212) 929-6205

October 17, 2016

Dear Judge Rakoff:

I am a psychiatrist certified by the American Board of Psychiatry and Neurology since 1981 and have been in active psychiatric practice since that time. I have also received added qualifications in Addiction Psychiatry by the American Board of Psychiatry and Neurology. Early in my career I worked in various capacities within the Department of Psychiatry at St. Vincent's Hospital and Medical Center of New York and, from 1985-1994, I was the Chief of the Alcoholism and Addiction Service within the Department of Psychiatry. Since then I have been in a private psychiatric practice with a specialization in addictive disorders including gambling.

**Patient Background**

Andrew Caspersen was referred to me after discharge from New York-Presbyterian Hospital on April 13, 2016. He had been admitted there on March 28, 2016 for depression and suicidal thoughts after his arrest on fraud charges. He was discharged when he was no longer actively suicidal and had achieved some emotional stability. I first saw him on April 14, 2016 and I have been seeing him twice weekly for psychotherapy since then. I am writing this letter at Mr. Caspersen's request.

Mr. Caspersen has been actively engaged in our therapy with the focus on understanding and eventually resolving and correcting the severe impact that his gambling and alcohol problems have had on his life. During the time I have seen him, now over six months, I have been deeply impressed with his commitment to treatment. He has pursued it honestly and seriously. He has immersed himself fully in treatment and clearly has benefitted substantially from it. In my many years working with persons with addictive disorders, I have had few patients who have taken their recovery so seriously. It is particularly impressive given how exceedingly severe his gambling addiction has been.

Mr. Caspersen's gambling problems follow an almost classical progressive pattern. He started gambling in college almost 20 years ago by going to casinos and quickly moved on to using online and bookie gambling because it was more easily available and gave him more immediate "action." In law school he began trading stocks but in a style that was more akin to placing bets. He used his own monies, tapping into trusts that he had access to. He shortly lost $3 million, all that he had, and when he confided this to his father he was simply told not to do it again. Following the loss, he suffered severe depression in the fall of 2000 and withdrew from a semester of law school. His parents arranged for him to be seen by doctors, but his trading losses were not disclosed. There was no effort to place oversight on the substantial funds that Mr. Caspersen received, often on a quarterly or semi-annual basis, from the family company.

Mr. Caspersen's craving for action increased over time. He took out loans against assets he had in order to continue trading options in a compulsive way. In 2007 he again went to his father and again was told not to do it again. There was no acknowledgement of his obvious gambling problem. Following his father's death in 2009, family distributions accelerated. The gambling compulsion continued and in 2012 he personally borrowed more than $2 million from his family under false pretenses in order to continue trading weekly options. He lost more than $6 million that year.

The compulsion to gamble was constantly increasing and by November 30, 2014 when he only had four weeks to wait before getting his sizable work bonus he realized that it was too painful to wait even one day before resuming his daily options bets. He then committed direct fraud by soliciting monies for trading. The thought of not having some action ongoing was too great for him to bear. In February 2016 his account peaked at more than $110 million. While most compulsive gamblers never have the ability to climb out of a hole, Mr. Caspersen's winnings would have enabled him to easily repay and exit the fraud. He thought of paying off the monies he obtained fraudulently but the thought was fleeting and the compulsion to continue his gambling was too strong. His inability to stop demonstrates how progressive his addiction had become. He just continued placing his bets and his account sank to $1 million.

With all serious addictive disorders, the behavior continues until some outside force interrupts the repetitive and destructive pattern. In Mr. Caspersen's case it was his arrest. In all of my years of treating compulsive gamblers, I have rarely met a patient who had so many years of regular cash infusions to continue his addiction unabated. When Mr. Caspersen finally exhausted his family resources, his addiction was full blown. Under the circumstances, the fact that he then took from others to continue gambling is not surprising.

In our sessions Mr. Caspersen has described a life that in recent years revolved around looking at a computer screen or phone constantly to monitor the market's continuous movements. Just as each puff of a cigarette gives a smoker pleasure, each look at the computer screen did the same for him. If the market was moving in his direction, he was excited. If it was moving against him, he was certain that the movement was temporary and would reverse itself. It stopped being about winning and was about being in the action. Just as a drug addict becomes tolerant to the amount of drug, Mr. Caspersen needed to gamble larger and larger sums to gain the excitement he was seeking. If X was enough today, he needed 2X after a period of time. Being away from the action for even a short time when on vacation or when the market was closed was like withdrawal. It was much worse than losing a bet.

If we look at Mr. Caspersen's drinking history we see a fairly typical pattern of escalating consumption with periodic attempts to cut down. He was aware of his need for alcohol and that he was increasingly unable to control his drinking. As a result, his most important goal was to keep the extent of his drinking secret. Even his wife was unaware of the extent and degree of his alcohol consumption. Alcohol is a disinhibitor and there is no doubt it helped Mr. Caspersen to blind himself to the consequences of his conduct and continue on his self-destructive course. Since his hospitalization on March 28 he has not consumed any alcohol nor gambled and has actively pursued resolution of his drinking problem. In addition to our therapy sessions he is attending AA meetings, reading recovery literature and being treated with Naltrexone, a medication to help decrease his alcohol cravings and to assist with his goal of abstinence. He is

also being treated with anti-depressant medication to help reduce his depressive symptoms and the potential that they may contribute to his craving to drink or gamble.

Prior to his arrest, Mr. Caspersen had suffered two traumatic episodes in his life: the death of his long-time girlfriend in the World Trade Center on 9/11 and his father's downfall and suicide in 2009. Mr. Caspersen's drinking substantially increased after his girlfriend's and father's deaths. His gambling increased even more after his father's suicide. It is not surprising that these traumatic events led to substantial increases in his addictive behaviors of gambling and drinking.

Mr. Caspersen had always revered his father and so his father's confession before his death that he had taken money from his sons had a deep emotional impact on him. While Andrew sought relief in gambling and drinking at the time, he has now embraced therapy to understand and process his father's downfall.

**Diagnosis**

Therapy has focused on helping Mr. Caspersen understand his illnesses and learn about and practice recovery techniques. Increasingly we have focused less on the past and more on how he is living his life now. I have seen my role almost like a tutor, helping him to rebuild and navigate his relationship with his wife, to enjoy fatherhood which has become a primary focus, and to reach out and make amends to those he has harmed. Service to other addicts has been an increasing focus of his. He is a walking announcement for the destructive force of compulsive gambling and has already been telling his story in AA and GA meeting rooms.

Mr. Caspersen's formal psychiatric diagnoses based on the DSM-5 are as follows --

1. Gambling Disorder, Persistent, Severe, In Early Remission (F63.0)
2. Alcohol Use Disorder, Severe, In Early Remission (F10.20)
3. Major Depressive Disorder, Moderate, Recurrent Episode (F33.1)

DSM defines early remission as 3 to 12 months of sobriety/abstinence.

**Recovery**

With his wife standing by him and supporting his treatment and recovery, Mr. Caspersen has positive goals to aim towards. He is well aware of how he went astray and wants nothing more than to be an exceptional role model for his children. I have done this work long enough to know that foretelling the future of any patient is risky, especially one who has been addicted to a drug or gambling. However, Mr. Caspersen's odds of continued recovery are especially good for the following reasons.

First Mr. Caspersen hit a very clear, sudden, public and low rock bottom. He lost his money, reputation, career and potentially his freedom. In the process, he violated core values he held dear. He is keenly aware that all of this was brought about by his addictions and is deeply remorseful. His words and behavior clearly evince a strong desire to never return. He is relieved that his problems were identified and that a course of treatment was defined.

Second because Mr. Caspersen successfully hid his addictions, he never had to develop skills of rationalization and denial. Most addicts are forced to defend their addictions to loved ones and often come to believe their justifications. Mr. Caspersen was ashamed of his gambling. When confronted with the reality of his problems after his arrest he was able to see them more clearly than if he had spent years justifying and denying the issues. He now has incredible relief from no longer being subservient to his addictions.

Third Mr. Caspersen has an excellent support structure. His wife has decided to stay with him in spite of his crimes. His young children provide him daily motivation to stay the course. His family, in-laws, friends, church and fellow members of GA and AA are all very aware of his addictions and crimes and are supportive of him. Some of those he harmed are assisting in his recovery and effort to make amends. Community awareness and support are important elements of sobriety maintenance.

Fourth Mr. Caspersen had never seriously attempted to stop previously. He told himself he would but never tried. Now that he is committed to staying sober and abstinent his behavior has been exemplary. He does not suffer from a poor relapse track record.

Finally Mr. Caspersen has done all of the right things in his commitment to stay sober and abstinent. He has attended AA and GA meetings regularly and has worked through the 12 steps. In my experience, AA and GA play a critical role in sustained recovery. He takes his medication and makes all of his appointments. He has written letters to those he's harmed and met with several victims. By doing all of these things he is building a solid recovery foundation.

**Conclusion**

I believe that Andrew Caspersen's judgment was severely compromised by his gambling and alcohol addictions when he committed his fraud. His decision-making processes were overwhelmed by those addictions. He is now approaching recovery in an exemplary way and I am optimistic for his future. As a psychiatrist, I worry that a term of imprisonment will impair his recovery. I recognize that as a judge you have to consider more that Mr. Caspersen's addictions and recovery in determining his sentence. I hope this assessment will be of assistance to you. I am pleased to provide any additional information.

Sincerely,

Neil Goldmann MD